1  Jacob A. Gillick, SBN 312336
   jgillick@PHGLawGroup.com
2  PHG Law Group
   501 West Broadway, Suite 1480
3  San Diego, CA 92101
   Telephone:  (619) 826-8060
4  Facsimile:  (619) 826-8065

5  Attorneys for Defendant Zeetogroup, LLC

6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  DIGITAL MEDIA SOLUTIONS,        Case No. 22CV1184 JLS AHG
    LLC,
12                                  **MEMORANDUM OF POINTS AND**
                   Plaintiff,       **AUTHORITIES IN SUPPORT OF**
13                                  **MOTION FOR SUMMARY**
          v.                        **JUDGMENT**
14
    ZEETOGROUP, LLC,
15                                  Date:      November 3, 2022
                   Defendants.      Time:      1:30 p.m.
16                                  Dept:      4D
                                    Judge:     Hon. Janis L. Sammartino
17

18

19

20

21

22

23

24

25

26

27

28

                                1

1

## **<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ...................................................................................................4

II. STATEMENT OF LAW ........................................................................................5

III. STATEMENT OF FACTS ...................................................................................6

    A.    TERMS OF THE AGREEMENT ...............................................................7

    B.    DMS Ran Fraudulent Traffic Through Zeeto's Platform ............................9

IV. ARGUMENT .....................................................................................................10

    A.    Plaintiff's First Cause of Action for Breach of Contract Fails ..................10

    B.    Plaintiff's Second Cause of action for Breach of Implied Duty of Good

Faith and Fair Dealing Fails ......................................................................11

    C.    Plaintiff's Third Cause of Action for Unfair Competition Fails.................13

V. CONCLUSION ....................................................................................................15

MOTION FOR SUMMARY JUDGMENT                    22CV1184 JLS AHG

1

# <u>TABLE OF AUTHORITIES</u>

2

## CASES

3  *Bevis v. Terrace View Partners, LP*

4     33 Cal.App.5th 230 (2019)...............................................................12

5  *Comunale v. Traders & General Ins. Co.*

6     50 Cal.2d 654 (1958)......................................................................11

7  *Engl. v. Aetna Life Ins. Co.*

8     139 F.2d 469 (2nd Dist. 1943) ..........................................................5

9  *Guz v. Bechtel National, Inc.*

10     24 Cal.4th 317 (2000).....................................................................12

11  *In re: Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*

12     538 F.2d 180 (8th Dist. 1976.) ..........................................................6

13  *Richman v. Hartley*

14     224 Cal.App.4th 1182 (2014)..........................................................10

15

## STATUTES

16  California Business & Professions Code Section 17200......................13

17

## RULES

18  Federal Rule of Civil Procedure, Rule 56(a)..........................................5

19  Federal Rule of Civil Procedure, Rule 56(c)(4) .....................................5

20  Federal Rule of Civil Procedure, Rule 56(c)(A) .....................................5

21  Federal Rule of Civil Procedure, Rule 56(c)(B).....................................5

22

23

24

25

26

27

28

3

# I.

## __INTRODUCTION__

Defendant Zeetogroup, LLC ("Zeeto") owns and operates the Zeeto Ad Network ("ZAN") which allows publishing companies like Plaintiff Digital Media Solutions, LLC ("DMS") to place Zeeto technology on their website to display ads, for which Plaintiff gets paid. Zeeto sells the ad space to advertisers which generates revenue, a portion of the revenue is paid to the publisher, in this case DMS. For years, this was a very successful relationship for both parties.

Zeeto has an excellent reputation for providing high quality traffic free of fraud to our advertisers and prides itself on this reputation. To ensure that publishers are incentivized to not engage in any deceptive practices, Zeeto has implemented contractual safeguards, including the right to not make payment in the event of fraud.

In July to September 2021, DMS breached the agreement with Zeeto by sending fraudulent traffic through ZAN. Zeeto, using third party technology to monitor publishers, caught this misconduct and in accordance with the agreement, elected not to pay DMS. DMS signed the agreement knowing what the consequences of sending fraudulent traffic would be yet still decided to engage in deceptive practices to maximize its profits. DMS brazenly implemented fraudulent practices and is now "doubling down" on their actions through this meritless lawsuit filed for the sole purpose of harassing Zeeto.

Zeeto is free of any obligation to pay the damages alleged because of the fraudulent traffic. Not making payment is Zeeto simply acting on its contractual rights in response to said fraudulent traffic. Through this motion, Zeeto seeks summary judgment on the basis that there is no dispute of fact as to the validity of the agreement between the parties which requires Plaintiff not to run fraudulent traffic through Defendant's network. That Zeeto found fraud. And that it had the contractual right to not make payment—which it did.

4

## II.

## <u>STATEMENT OF LAW</u>

A Motion for Summary Judgment provides a procedure for terminating without trial actions in which there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc., R. 56 subd. (a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at subd., (c)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* at subd., (c)(4).

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as requested by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitle to it; or (4) issue any other appropriate order. *Id.* at subd., (g).

The history of the Summary Judgment procedure shows that it is "intended to permit a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried." *Engl. v. Aetna Life Ins. Co.,* 139 F.2d 469, 472 (2nd Dist. 1943). "Summary judgment is to be used not as a substitute for trial, but only when it is quite clear what the truth

/ / /

1  is and that no genuine issue remains for trial." *In re: Coordinated Pretrial*

2  *Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180, 184 (8th Dist. 1976).

3      As described below, DMS is unable to dispute that, (1) the Agreement is

4  valid, (2) the agreement allows Zeeto to withhold payments in the event of fraud

5  and, (3) Zeeto had sole discretion to withhold payments despite having supporting

6  evidence from Anura, a third-party auditor.

7                                    **III.**

8                        **STATEMENT OF FACTS**

9      ZeetoGroup, LLC ("Zeeto") is in the business of displaying ads to customers

10 based on data.  Declaration of Stephan Goss ("Goss Decl."), ¶ 2.  One way to do

11 this is through the Zeeto Ad Network ("ZAN").  *Ibid.*

12     ZAN allows advertisers to place advertisements on websites of its Publishing

13 partners, for example DMS, and pays those publishers a percentage of the price

14 paid by the advertiser to Zeeto.  *Id.* at ¶ 3.  For example, Domino's Pizza might

15 want to advertise its restaurants.  Domino's, through ZAN, can place ads on all the

16 websites that are part of Zeeto's network.  If Domino's buys ad space through ZAN

17 on a website owned by DMS, then Zeeto pays DMS a percentage of the advertising

18 cost charged to Dominos.

19     Since publishers get paid a percentage of the revenue that is paid by

20 advertisers, the more traffic they send, the more they get paid.  *Id.* at ¶ 4.  Sadly,

21 some publishers abuse this arrangement by sending what is called "fraudulent

22 traffic."  *Ibid.* "Fraudulent traffic" is a deceptive and unethical practice to makes it

23 seem as if Publisher had displayed the ads to people that might be interested, when

24 in fact they did not.  *Id.* at ¶ 5.  There are many ways to accomplish this, including

25 bots that generate fake ad impressions or "click farms" where a real human is paid

26 to produce fake clicks with no chance of conversion.  *Id.* at ¶ 6.  DMS supplying

27 fraudulent traffic to ZAN caused direct harm to Zeeto as well as its advertisers,

28 / / /

MOTION FOR SUMMARY JUDGMENT                    22CV1184 JLS AHG

thereby putting Zeeto in jeopardy of sullying its reputation which is based on selling high quality advertising space, free of fraudulent traffic. *Id.* at ¶ 7.

## A.  TERMS OF THE AGREEMENT

On or around August 23, 2018, DMS and Zeeto entered into the Publisher Terms of Service Agreement ("Publisher Agreement") attached to the Declaration of Stephan Goss as "Exhibit 1."  In terms of services described under the Agreement, DMS was allowed to access the Zeeto Platform comprised of "the Zeeto Technology (as defined [under section one]), and Zeeto's online publisher portal."  *Id.* at ¶ 1.  According to section one of the Agreement, DMS agreed that:

> When engaging in the Zeeto platform and when placing the Zeeto Technology on your website, application, or mobile site, or any other property owned by Publisher (the 'Publisher site') you permit Zeeto to serve questions, advertisements, retargeting cookies and other monetization methods on the Publisher Site.  You agree that Zeeto may use the data that is being generated from the Zeeto Technology by selling it to third parties under the methods approved by the Publisher and in accordance to the revenue share.

Given this relationship where Publishers like DMS supply traffic through procurement methods over which Zeeto has no insight, Zeeto implemented multiple safeguards in its Agreement to prevent DMS, or any other client, from attempting to send fraudulent traffic to Zeeto and then charging them for it.  *Id.* at ¶ 9. Pursuant to sections 3(c) through (e) of the Agreement:

> c. Prohibited Content. Unless Zeeto provides prior written consent, you may not place the Zeeto Technology on any part of the Publisher Site containing the following:
>
> i.     Deceptive or misleading content, or content that otherwise fails to comply with applicable federal and state consumer protection laws;
>
> ii.    Content that infringes upon the personal rights, trademarks, trade name, logo, publicity right, copyright, or other intellectual property right of any third party;
>
> iii.   Content that would be considered an invasion of privacy, degrading, or libelous;
>
> iv.    Content that is construed as violent, discriminatory, pornographic, or hate speech;

7

v.   Malware or adware; or
vi.  Content that is illegal, promotes illegal activity, or infringes on
     the legal rights of others.

d. Deceptive Practices. Zeeto reserves the right to terminate this
Agreement and investigate Publisher for deceptive practices at its sole
discretion. "Deceptive Practices" for the purposes of this Agreement
include, but are not limited to, the following:

i.    Using fake redirects, automated software, fraud, or acting in any
      way to generate false clicks or leads ("Click Fraud");
ii.   Generating multiple leads using proxy servers;
iii.  Using iFrames, hidden frames, or redirects; and/or
iv.   Any method in which you use the Zeeto platform in attempt to
      increase your revenue in dishonest or deceitful way that harms
      the quality of the Zeeto Platform and its users.

e. Damages. If Zeeto determines that Publisher has violated any
portion of this Section 3, Zeeto may withhold payment owed to
Publisher. Further, if Publisher violates Section 3(d), the Publisher
agrees to pay an amount equal to $100,000 in liquidated damages.
Publisher agrees that the liquidated damages constitutes compensation
and are not construed as a penalty. Publisher acknowledges that actual
damages may be difficult to current estimate or determine based on a
breach of Section 3(d) and that the liquidated damages are a reasonable
estimate of the anticipated or actual harm that may arise from a breach
of this Section 3(d).

According to section four (4) of the Agreement:

You acknowledge and agree that Zeeto's tracking statistics will be
used to determine the numbers upon which payment is made. Zeeto
will not pay Publisher in the case of (as Zeeto may determine in its
sole discretion): spam, fraud, submission of false leads/data, violation
of the Agreement, and any other way the Publisher (or a third party on
Publisher's behalf) may use to artificially inflate revenues or
disadvantage advertisers in any way.

The Agreement defines "fraudulent traffic," provides Zeeto with authority to

withhold payments and investigate fraud, and finally the authority to "not pay

Publisher" as it determines in its "sole discretion."

/ / /

/ / /

8

### B.    DMS Ran Fraudulent Traffic Through Zeeto's Platform

Zeeto, despite having the right to determine what is fraudulent traffic in its "sole discretion," has obtained third party verification that DMS was running fraudulent traffic through ZAN.

Anura, a third-party company not named in this lawsuit, provides to Zeeto "[t]he world's most accurate fraud solution [that] protects your web assets by eliminated bots, malware and human fraud, ensuring your content is seen by real people." See, *www.anura.io.* Its mission is to "increase our client's growth and improve their marketing results through accurate and effective ad fraud mitigation. Our team of ad fraud experts has navigated trillions of requests for our customers, and at the end of the day, our expertise, ethics, and total dedication is the secret sauce to not only our success – but your success." See, *www.anura.io/about-us.*

Specifically with regards to services provided to companies like Zeeto, "Ad fraud is the practice of viewing, clicking, converting, or generating false interactions with any web asset for the sole purpose of earning money directly or indirectly. Ad fraud can be committed by bots, malware, or humans." See, *www.anura.io/ad-fraud-detection.* Anura is a top provider of fraud detection that Zeeto has been working with for years to protect its properties. Goss Decl., ¶ 10. Further, Anura is so well trusted in the industry, that DMS itself also used Anura to monitor traffic it was running purchasing, clearly showing that Anura is a trusted third party by everyone, even DMS. *Id.* at ¶ 11.

Attached to the Declaration of Stephan Goss as "Exhibit 2" is an Anura report run from April 1, 2021, through June 30, 2021, of DMS's traffic through the ZAN platform. Goss Decl., ¶ 12. On the second page, the "Bad" traffic is indicated by a red line which shows virtually zero instances of fraudulent traffic all the way through June 30, 2021. *Id.* at Exhibit 2.

Attached to the Declaration of Stephan Goss as "Exhibit 3" is an Anura report run from July 1, 2021, through September 30, 2021. Goss Decl., ¶ 13. On the

MOTION FOR SUMMARY JUDGMENT                    22CV1184 JLS AHG

1    second page, the "Bad" traffic is significantly higher with the largest spike

2    occurring around September 26, 2021, with around 25,000 instances of fraudulent

3    traffic being flagged.  *Id.* at Exhibit 3.  These instances of fraud gave Zeeto the

4    authority to not pay DMS pursuant to sections three and four of the Agreement.

5        It is unclear what caused DMS to suddenly run such substantial fraudulent

6    traffic through ZAN.  Clearly the fraudulent traffic was in violation of the

7    Agreement and Defendant has every right to not pay DMS for the fraudulent traffic.

8    Therefore, Zeeto requests summary judgment of all causes of action.

9                            **IV.**

10                         **ARGUMENT**

11       **A.    Plaintiff's First Cause of Action for Breach of Contract Fails**

12       To prevail on a cause of action for breach of contract, the plaintiff must

13    prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for

14    nonperformance, (3) the defendant's breach, and (4) the resulting damage to the

15    plaintiff."  *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).

16       Plaintiff alleges that "Defendant has failed and refused and continues to

17    refuse to tender its performance under the contract, in that Zeeto is refusing to pay

18    monies owed to DMS for revenue DMS generated using Zeeto's platform before

19    July and September of 2021."  Complaint, ¶ 15.  Plaintiff specifically claims

20    $944,176.27 in unpaid invoices.  *Id.* at ¶ 16.

21       According to the Agreement: "If Zeeto determines that Publisher has violated

22    any portion of this Section 3, Zeeto may withhold payment owed to Publisher."

23    Goss Decl., Exhibit 1, § 3(e).  Zeeto did this while it investigated DMS's traffic.

24    *Id.* at ¶ 14.  According to section four: "Zeeto will not pay Publisher in the case of

25    (as Zeeto may determine in its sole discretion): spam, fraud, submission of false

26    leads/data, violation of the Agreement, and any other way the Publisher (or a third

27    party on Publisher's behalf) may use to artificially inflate revenues or disadvantage

28    advertisers in any way."  *Id.* at Exhibit 1, § 4.

1    Zeeto does not dispute that DMS sent traffic during the months in question.

2    *Id.* at ¶ 14.  Zeeto also does not dispute that if the traffic had been free of fraud (as

3    determined by Zeeto), then Zeeto would owe $944,176.27.  *Id.* at ¶ 14.  None of

4    these facts claimed by DMS are disputed by Zeeto.  Unfortunately, DMS simply

5    ignores its own fraud and Zeeto's right to act.

6    Zeeto is explicitly named by the agreement as to who makes the

7    determination of if there was fraudulent traffic.  Zeeto, in its "sole discretion"

8    determines if there had been a violation of section 3(d).  Zeeto, in its sole

9    discretion, has determined that there was fraudulent traffic and therefore withheld

10    payment during investigation before eventually deciding not to pay for the

11    fraudulent traffic.  Goss Decl., ¶ 15.  Even further, and although there is no

12    requirement for third-party verification or any need to provide the fraud, Zeeto

13    obtained Anura reports evidencing a significant spike in fraudulent traffic sent by

14    DMS.  Goss Decl., Exhibits 2-3.  Based on this fraud, and section 3(e) of the

15    Agreement, Zeeto is allowed to withhold payments to DMS and is even entitled to

16    $100,000 in damages.  Complaint, Exhibit 1, §3(e).

17    Plaintiff complains that by enacting section 3(e) of the Agreement, Zeeto has

18    breached the contract.  Given the actual terms of the Agreement, and DMS's clear

19    fraud, there is no genuine dispute of fact that Zeeto has the right to not make

20    payment to DMS.  Therefore, Defendant requests summary judgment dismissing

21    Plaintiff's First Cause of Action with prejudice.

22    **B.    <u>Plaintiff's Second Cause of action for Breach of Implied Duty of</u>**

23    **<u>Good Faith and Fair Dealing Fails</u>**

24    "There is an implied covenant of good faith and fair dealing in every contract

25    that neither party will do anything which will injure the right of the other to receive

26    the benefits of the agreement." *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d

27    654, 658 (1958).  "The implied covenant of good faith and fair dealing cannot be

28    read to require defendants to take a particular action that is discretionary under the

MOTION FOR SUMMARY JUDGMENT                    22CV1184 JLS AHG

1   contract when the contract also expressly grants them the discretion to take a

2   different action.  To apply the covenant to require a party to take one of two

3   alternative actions expressly allowed by the contract and forgo the other would

4   contravene the rule that the implied covenant of good faith and fair dealing may not

5   be 'read to prohibit a party from doing that which is expressly permitted by an

6   agreement." *Bevis v. Terrace View Partners, LP*, 33 Cal.App.5th 230, 256 (2019).

7       "The covenant of good faith and fair dealing, implied by law in every

8   contract, exists merely to prevent one contracting party from unfairly frustrating the

9   other party's right to receive the benefits of the agreement made.  The covenant

10  thus cannot 'be endowed with an existence independent of its contractual

11  underpinnings.'  It cannot impose substantive duties or limits on the contracting

12  parties beyond those incorporated in the specific terms of their agreement."  *Guz v.*

13  *Bechtel National, Inc.*, 24 Cal.4th 317, 349-350 (2000).

14      Plaintiff alleges in its Complaint that "Defendant breached the implied

15  covenant of good faith and fair dealing by failure to cooperate with Plaintiff.

16  Defendant rejected Plaintiff's performance for improper and invalid reasons."

17  Complaint, ¶ 20.  This cause of action fails as there is no dispute that Zeeto has <u>sole</u>

18  <u>discretion</u> to determine fraud and not make payments.  Goss Decl., Exhibit 1, § 3-4.

19  There can be no violation of an implied duty when Zeeto has the express written

20  right.

21      Section 3(d) of the Agreement states that "Zeeto reserves the right to

22  terminate this Agreement and investigate Publisher for deceptive practices at its

23  sole discretion."  Section 3(e) states that: "If Zeeto determines that Publisher has

24  violated any portion of this Section 3, Zeeto may withhold payment owed to

25  Publisher."  According to section four: "Zeeto will not pay Publisher in the case of

26  (as Zeeto may determine in its sole discretion): spam, fraud, submission of false

27  leads/data, violation of the Agreement, and any other way the Publisher (or a third

28  party on Publisher's behalf) may use to artificially inflate revenues or disadvantage

12

1  advertisers in any way." *Id.* at Exhibit 1, § 4.  In addition to being granted sole

2  discretion, Zeeto has also obtained third party verification from Anura that DMS

3  was running significant fraudulent traffic through ZAN.  Goss Decl., Exhibits 2-3.

4  Anura is a valuable tool used industrywide, even by DMS itself.

5        Zeeto had the contractual right to, in its sole discretion, determine if there

6  was fraud or not.  DMS's claim of a violation of the implied duty of good faith and

7  fair dealing fails because DMS gave the right to make this decision to Zeeto.  Zeeto

8  could not have breach the implied duty of good faith and fair dealing.  Therefore,

9  Plaintiff's Second Cause of Action should be dismissed with prejudice.

10        **C.**    **Plaintiff's Third Cause of Action for Unfair Competition Fails**

11        "[U]nfair competition shall mean and include any unlawful, unfair or

12  fraudulent act or practice and unfair, deceptive, untrue or misleading advertising."

13  Cal. Bus. & Prof. Code § 17200.  Plaintiff alleges that "Defendant has committed

14  the following acts of unfair competition. . . (a) Refusing to pay DMS $944,176.27

15  for revenue DMS generated using Zeeto's platform between July and September of

16  2021; (b) Breaching the Agreement with DMS; (c) Breaching the implied covenant

17  of good faith and fair dealing under the contract; and (d) failing or refusing to

18  cooperate with Plaintiff in good faith, including, but not limited to, improperly

19  rejecting Plaintiff's performance for invalid reasons."  Complaint, ¶ 23.

20        With regards to allegations (a) through (c), DMS agreed that Zeeto has sole

21  discretion to determine if fraud had occurred and to not make payment in the event

22  it determines fraud. Goss Decl., Exhibit 1 § 3-4. There is no dispute as to the

23  validity of the Agreement or the meaning of its terms and therefore no valid cause

24  of action against Zeeto exists. In reality, it was DMS that engaged in acts of unfair

25  competition by using deceptive practices and running fraudulent traffic through

26  ZAN.

27        Finally, Plaintiff's allegation that Zeeto failed or refused "to cooperate with

28  Plaintiff in good faith, including, but not limited to, improperly rejecting Plaintiff's

1   performance for invalid reasons" should be dismissed. Complaint, ¶ 23.  Section

2   3(d) of the Agreement expressly states that "Zeeto reserves the right to terminate

3   this Agreement and investigate Publisher for deceptive practices at its sole

4   discretion."  According to section four: "Zeeto will not pay Publisher in the case of

5   (as Zeeto may determine in its sole discretion): spam, fraud, submission of false

6   leads/data, violation of the Agreement, and any other way the Publisher (or a third

7   party on Publisher's behalf) may use to artificially inflate revenues or disadvantage

8   advertisers in any way."  *Id.* at Exhibit 1, § 4.

9        Despite not needing any evidence to withhold payments to DMS, Zeeto

10  reports from a third-party auditor, Anura, proving that DMS ran a large amount of

11  fraudulent traffic in late 2021.  Goss Decl., Exhibit 3.  Therefore, there is no dispute

12  that the Agreement is valid, that Zeeto had sole discretion to determine fraud, that

13  Zeeto has third-party verifications of fraud, and that Zeeto had the right to withhold

14  payments.  This Third Cause of Action for unfair business practices should be

15  dismissed with prejudice.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

MOTION FOR SUMMARY JUDGMENT                     22CV1184 JLS AHG

1

2                                    **V.**

3                              **CONCLUSION**

4         DMS filed this suit, fully knowing based on the contract that they had no

5  probable cause and their purposeful actions of sending fraudulent traffic through

6  ZAN would lead to all their payments being withheld.  As established herein, there

7  was a valid Agreement between the parties, DMS ran fraudulent traffic through

8  ZAN, and Zeeto had the right to withhold payment of invoices.  This is not a matter

9  which requires trial.  Therefore, Zeeto requests all causes of action against it be

10  dismissed with prejudice.

11                                    Respectfully submitted,

12                                    **PHG Law Group**

13
    Dated:  September 13, 2022        *s/ Jacob A. Gillick*_____  _____
14                                    Jacob A. Gillick, Esq.
                                      jgillick@PHGLawGroup.com
15                                    Attorneys for Defendant Zeetogroup, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT                    22CV1184 JLS AHG