1  Mark E. Ellis - 127159
   Omid Shabani - 267447
2  ELLIS LAW GROUP LLP
   1425 River Park Drive, Suite 400
3  Sacramento, CA  95815
   Tel: (916) 283-8820
4  Fax: (916) 283-8821
   mellis@ellislawgrp.com
5  oshabani@ellislawgrp.com

6  Attorneys for Plaintiff DIGITAL MEDIA SOLUTIONS, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>　　Defendant. | Case No.:  22CV01184 JLS-AHG<br><br>**PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Declarations of Fernando Borghese and Omid Shabani filed concurrently herewith]<br><br>**DATE:  November 3, 2022**<br>**TIME:   1:30 p.m**<br>**DEPT:  4D**<br>**HON. JANIS L. SAMMARTINO** |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. BRIEF STATEMENT OF FACTS ........................................................................... 2

III. PROCEDURAL HISTORY ...................................................................................... 4

IV. LEGAL STANDARD FOR SUMMARY JUDGMENT ........................................... 4

V. ARGUMENT .............................................................................................................. 5

   A. Disputes of Material Facts Exist With Respect to Defendant's Allegations of "Fraudulent Traffic." ............................................................................................ 6

      1. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's First Cause of Action for Breach of Written Contract. ................................... 7

      2. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's Second Cause of Action for Breach Implied Duty of Good Faith and Fair Dealing. ............................................................................................................ 7

      3. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's Third Cause of Action for Violation of Business & Professions Code § 17200, et seq. ................................................................................................................... 9

   B. Genuine Disputes of Material Facts Exist With Respect to the Interpretation and Scope of the Agreement. ..................................................................................... 9

   C. The Court Should Deny the Summary Judgment, or, Alternatively, Grant a Continuance for Discovery Purposes, Pursuant to Rule 56(d). ........................... 12

VI. CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970)..................................................................5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................4, 11, 13

*Braxton-Secret v. A. H. Robins, Co.*, 769 F.3d 528 (9th Cir. 1985) .....................................5

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
  2 Cal.4th 342 (1992)..............................................................................................................7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................................4

*Clark v. Capital Credit & Collection Services, Inc.* 460 F3d 1162 (9th Cir. 2006).........12

*Clausen v. M/V New Carissa,* 339 F.3d 1049 (9th Cir. 2003)..............................................11

*Cobb v. Ironwood Country Club,* 233 Cal.App.4th 960 (2015) ...........................................8

*Convertino v. United States Dept. of Justice,* 684 F3d 93 (DC Cir. 2012) .......................13

*Cox v. Hollywood Film Enterprises*, 109 Cal.App.2d 320 (1952) ........................................8

*Darbun Enterprises, Inc. v. San Fernando Community Hosp.*, 239 Cal.App.4th 399
  (2015)......................................................................................................................................7

*Firman v. Life Ins. Co. of North America*, 684 F.3d 533 (5th Cir. 2012) ............................4

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 119 (9th Cir. 2014) .........4, 5

*Garrett v. City & County of San Francisco* 818 F2d 1515 (9th Cir. 1987).......................12

*McMillion v. City of NY*, 711 F.3d 120 (2nd Cir. 2013) .......................................................5

*McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009).........................................5

*Racine & Laramie, Ltd. v. Department of Parks & Recreation,* 11 Cal.App.4th 1026
  (1992)......................................................................................................................................8

*San Mateo Union High School Dist. v. County of San Mateo,* 213 Cal.App.4th
  418 (2013)..............................................................................................................................7

*SEC v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008).......................................................4

*Texas Partners v. Conrock Co.*, 685 F.2d 1116 (9th Cir. 1982) ........................................... 13

*VISA Int'l Service Ass'n v. Bankcard Holders of America* 784 F2d 1472
   (9th Cir. 1986) ................................................................................................................. 12

*Wolf v. Superior Court,* 114 Cal.App.4th 1343 (2004) ............................................ 6, 7, 10

**Statutes**

Business & Professions Code § 17200 ........................................................................... 9

**Rules**

Fed. R. Civ. Pro. 56(a) ................................................................................................. 4, 9

Fed. R. Civ. Proc. 56(d) ......................................................................................... 6, 12, 13

**Treatises**

1 Witkin, *Summary 11th Contracts* (2022) ..................................................................... 8

Schwarzer, et al. <u>*Cal. Prac. Guide: Federal Civ. Proc. Before Trial*</u>,
   (Thomson Reuters/Rutter Group 2022) .......................................................................... 4

## I. INTRODUCTION

Defendant Zeetogroup, LLP ("Defendant")'s instant motion for summary judgment must be denied because of genuine disputes of material fact, including, but not limited to:

1. Whether genuine dispute of material fact as to the parties' interpretation of the pertinent provisions of the Agreement between the Parties.

2. Whether the parties' course of conduct shows that their interpretation of the contract does not support Defendant's position, in that Plaintiff maintains that Defendant is liable for all of the valid traffic hits that it received during the months in dispute.

3. Whether Defendant can unilaterally terminate the Agreement retroactively, and thus, refusing to pay.

4. Whether there was any "fraudulent traffic" or clicks.

To be clear, Plaintiff brings this lawsuit to collect or otherwise disgorge on monies owed to it for all of the <u>valid</u> traffic for which Defendant was paid and is withholding payment of monies owed to plaintiff pursuant to the parties' revenue sharing agreement. Plaintiff does not seek to enforce the Agreement as to any "fraudulent traffic." This position is not only supported by the law of contract interpretation, but also is corroborated by the parties' course of conduct.

The terms of the contract expressly provide that Defendant may use its software to detect "fraudulent traffic," implying that Defendant would eliminate those and only pay for valid traffic—a provision which is directly in contradiction with Defendant's contractual interpretation in its motion for summary judgment. According to Defendant, the Agreement allows it to withhold all payment of earned monies from even valid traffic, in its "sole discretion," by unilaterally terminating the contract. Such an interpretation of the contract is not only contradicted by the provisions of the Agreement, but also would render the Agreement illusory. Furthermore, Defendant's strict and draconian interpretation of the Agreement is in contrast with the parties' course of conduct, as well

PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

22cv01184

as general cannons of contract interpretation, as fully discussed, *infra*.

## II. BRIEF STATEMENT OF FACTS

The parties here, Plaintiff, Digital Media Solutions, LLC ("DMS" or "Plaintiff") and Defendant Zeetogroup, LLC ("Defendant" or "Zeeto") have had a mutually beneficial relationship with each other since as early as 2015. (Declaration of Fernando Borghese ("Borghese Decl.") ¶ 5.)

On or about August 23, 2018, the parties entered into the agreement at issue here; namely, the "Zeeto Publisher Terms of Service" ("Agreement"). (Borghese Decl. ¶ 4; *see also,* Declaration of Stephan Goss ("Goss Decl."), Exh. 1.)

The parties' agreement included a revenue sharing provision, which required payments to DMS from revenue generated by DMS' traffic, on a net 30 basis. (Goss Decl., Exh. 1, at p. 2 ¶ 4.) Zeeto's software counts the number of clicks or hits on the DMS websites and monetizes the traffic by converting the traffic into revenue. Zeeto does this using a pay-per-click ("PPC") model.

Section 4 of the agreement provides:

> 4. **Payment.** By agreeing to allow Zeeto to monetize your traffic, Zeeto will pay you based on a revenue share of the revenues generated on behalf of Publisher by the Zeeto Technology. Zeeto will retain the agreed to percentage of the revenue for each calendar month and payment will be made from Zeeto to Publisher on a net 30 basis for the remainder of the revenue. The revenue share percentage and other terms applicable to monetizing and revenue sharing will be presented to you in the Zeeto Platform, if applicable. The Zeeto Platform also includes reporting, which will provide information regarding transactions and other information regarding performance.
>
> You acknowledge and agree that Zeeto's *tracking statistics will be used to determine the numbers upon which payment is made. Zeeto will not pay Publisher in the case of (as Zeeto may determine in its sole discretion): spam, fraud*, submission of false leads/data, violation of this Agreement, and any other way the Publisher (or a third party on

> Publisher's behalf) may use to artificially inflate revenues or disadvantage advertisers in any way. (Emphasis added.)

(Goss Decl., Exh. 1.) While the Agreement contemplates Zeeto possessing the discretion to determine whether a click or hit is not valid (such as by a "bot") and not pay for *that* click, Section 4 also makes clear that DMS is to be compensated for real clicks or hits. More importantly, there is no term in the Agreement that gives Defendant the right to withhold payment from DMS entirely for non-fraudulent hits, much less to refuse to pay at all. Such a term just does not exist and cannot fairly be read into the agreement.

For three years, the agreement worked. There were no claims brought by Defendant with respect to the Agreement between the parties, from August 2018 through July of 2021. (Borghese Decl., ¶ 5.) However, in or about late 2021, Defendant unilaterally withheld monies owed to DMS, claiming that alleged "fraudulent traffic" was identified on DMS' traffic. (*Id.* ¶ 6.)

DMS denies any allegation of having caused fraudulent traffic. (*Id.* ¶¶ 6-7.)

Nevertheless, Defendant flatly refused to pay DMS, not simply for the hits that, according to Defendant, were allegedly fraudulent, but it refused to pay for any of the revenues it received from any of the traffic generated by DMS which Defendant had monetized.

Furthermore, the Agreement contains an indemnification provision, but Defendant never requested any indemnification from DMS for any "fraudulent traffic." Instead, Defendant unilaterally withheld *all* payments to DMS, based on its unilateral and unsubstantiated allegations of "fraudulent traffic." Defendant did not identify with particularity which or what percentage of the traffic was allegedly "fraudulent," and instead, has simply withheld all payments to DMS, despite the fact that, having monetized DMS' traffic, Defendant has profited from traffic generated by DMS.

After months of attempting to resolve Zeeto's refusal to pay, DMS filed this action. Zeeto subsequently filed an action in state court against DMS and others, which DMS

removed to this Court.

## III. PROCEDURAL HISTORY

Plaintiff filed this Complaint on August 12, 2022 (ECF. No. 1). Defendant filed its Answer on September 7, 2022 (ECF No. 4). On September 13, 2022, Defendant filed the instant motion for summary judgment ("Motion") (ECF. No. 6).

As explained below, Defendant's premature motion for summary must be denied, because disputes of material facts exist between the parties with respect to the interpretation of the contract, as well as the allegations of "fraudulent traffic," which DMS denies.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

The rules relating to summary judgment are well established. A motion for summary judgment provides a procedure for penetrating the pleadings without the need for trial where "there is not a genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); Schwarzer, et al. *Cal. Prac. Guide: Federal Civ. Proc. Before Trial*, §§ 14.1, *et seq.* (Thomson Reuters/Rutter Group 2022). The summary judgment procedure is not disfavored, "but on the other hand, because it deprives the non-moving party of her right to a jury trial, strict standards apply; it is a motion with strict requirements to the moving party. *See* Schwarzer, *supra*, § 14.31 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)); Schwarzer, *supra*, § 14.204. Indeed, a court has the discretion to deny the motion even where the Rule 56 standards are met "if it believes that the better course would be to proceed for a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Firman v. Life Ins. Co. of North America*, 684 F.3d 533, 538 (5th Cir. 2012).

In considering the motion, the court views the evidence presented in the light most favorable to the opposing party. *Anderson, supra*, 477 U.S. at 255 ("the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); *accord Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 119, 1125 (9th Cir.

- 4 -

2014). Likewise, Summary judgment must be denied where an issue of material fact is disputed and cannot be resolved without judging the credibility of competent witnesses. *See, e.g., SEC v. M&A West, Inc.*, 538 F.3d 1043, 1054-1055 (9th Cir. 2008).

Finally, all reasonable inferences must be drawn in favor of the opposing party; this is true regardless of whether the facts are disputed or undisputed; the non-movants version of disputed issues of fact is presumed correct. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009); *McMillion v. City of NY*, 711 F.3d 120, 123 (2nd Cir. 2013).

In this regard, even where the basic facts are undisputed, if reasonable minds could differ on the inference to be drawn from those facts, then summary judgment should be denied. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Fresno Motors, LLC, supra*, 771 F.3d at 1125; *Braxton-Secret v. A. H. Robins, Co.*, 769 F.3d 528, 531 (9th Cir. 1985) (where conflicting inferences arise as state of mind, motive, intent, knowledge, truthfulness summary judgment improper).

## V. ARGUMENT

The Court should deny Defendant's premature motion for summary judgment, because of the numerous disputes of material fact which must be subject to discovery.

DMS' complaint alleges three causes of action for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) violation of the UCL (unfair business practices). While the purpose of a motion for summary judgment is to "penetrate" the pleadings, where, as here, triable issues of fact clearly exist, this is the beginning and end of the analysis.

Here, among other things, the parties wholly disagree on how to interpret the agreement's terms as to their respective rights and obligations if fraudulent clicks hit the DMS websites.[1]

---

[1] This assumes there have ever been fraudulent clicks, which Zeeto has failed to establish in its motion with admissible evidence. (*See* DMS' Objections to Evidence.)

- 5 -

PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

22cv01184

Zeeto moves for summary judgment on all three causes of action, arguing that any fraudulent click gives it the right not to pay DMS whatsoever, or at all. It fails however to show any term that expressly says this. As the saying goes, "one does not hide elephants in mouseholes."

DMS disagrees and, while acknowledging that Zeeto may have the right to judge fraudulent clicks, no language in the contract permits it to not pay for legitimate hits or clicks. Section 4 of the Agreement suggests just the opposite.

This is a classic contract interpretation issue which cannot be determined as a matter of law on summary judgment. *See, e.g., Wolf v. Superior Court,* 114 Cal.App.4th 1343, 1351 (2004).

Moreover, this motion is premature in that no discovery has yet taken place to establish the parties' objective beliefs as to their rights and obligations under the contract, their prior courses of conduct and whether in fact fraudulent clicks even exist. *See* Fed. R. Civ. Proc. 56(d). (Declaration of Omid Shabani ("Shabani Decl."), ¶¶ 5-7.)

### A. **Disputes of Material Facts Exist With Respect to Defendant's Allegations of "Fraudulent Traffic."**

First and foremost, DMS denies any allegation of "fraudulent" traffic on its platforms. Here, Defendant has failed to proffer any admissible evidence that there have been fraudulent clicks (and DMS disputes there have been), a condition precedent to summary judgment.

Specifically, DMS denies Defendant's claim that there was "fraudulent" traffic. (Borghese Decl., ¶ 7.) Defendant has failed to identify to DMS any "fraudulent clicks" or "hits." (*Id.*) Defendant has not provided any particular information with respect to its claim of "fraudulent traffic," such as how many clicks have occurred, or the origination, or the identity of such allegedly "fraudulent" traffic. (*Id.*)

### 1. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's First Cause of Action for Breach of Written Contract.

The Court should deny Defendant's premature motion for summary judgment as to Plaintiff's first cause of action for breach of contract, because genuine disputes of material fact exist as to the proper interpretation of the contract and the parties' course of conduct.

"The essential elements of a claim of breach of contract, whether express or implied, are the contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and the resulting damages to plaintiff." *San Mateo Union High School Dist. v. County of San Mateo,* 213 Cal.App.4th 418, 439 (2013); *Darbun Enterprises, Inc. v. San Fernando Community Hosp.*, 239 Cal.App.4th 399, 409 (2015).

Here, there is no dispute that the Agreement is a contract between the parties. Furthermore, Defendant admits that DMS performed under the Agreement. (*See* Goss Decl. ¶ 14 ("Zeeto does not dispute that DMS sent traffic during the months in question.")) Also, the resulting damages to DMS are clear and admitted by Defendant. (*Id.* ("Zeeto does not dispute that if the traffic had been free of fraud (as determined by Zeeto), then Zeeto would owe $944,176.27.").)

However, there are genuine disputes of material fact as to interpretation of provisions of the Agreement. DMS disagrees and, while acknowledging that Zeeto may have the right to judge fraudulent clicks, no language in the contract permits it to not pay for legitimate hits or clicks. Section 4 of the Agreement suggests just the opposite.

This is a classic contract interpretation issue which cannot be determined as a matter of law on summary judgment. *See, e.g., Wolf, supra,* 114 Cal.App.4th at 1351.

### 2. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's Second Cause of Action for Breach Implied Duty of Good Faith and Fair Dealing.

Under the circumstances, summary judgment would be particularly inappropriate to Plaintiff's second cause of action for breach of the covenant of good faith and fair dealing.

"Every contract imposes upon each party a duty of good faith and fair dealing in its

- 7 -

performance and its enforcement." "[] The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371–372 (1992) internal citations omitted.)

'In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" *Racine & Laramie, Ltd. v. Department of Parks & Recreation,* 11 Cal.App.4th 1026, 1031–1032 (1992) (internal citations omitted.)

"When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights." *Cobb v. Ironwood Country Club,* 233 Cal.App.4th 960, 963 (2015).

Here, Defendant interprets the contract to "not pay Publisher" as Defendant determines in its "sole discretion." (Defendant's Motion, at p. 8:23-25.)

Defendant's interpretation of the Agreement not only runs it afoul of the implied covenant of good faith and fair dealing, but also, such an interpretation would make the Agreement entirely illusory.

Where a principal reserves the election to approve or reject a contract made by his or her agent, no contract results until the approval. 1 Witkin, *Summary 11th Contracts* § 229 (2022). The same defect is present where one party reserves the unqualified right to cancel or withdraw from an agreement at his or her pleasure. *Id.* § 231; *Cox v. Hollywood Film Enterprises*, 109 Cal.App.2d 320, 325 (1952).

Here, there is a genuine dispute of material fact as to interpretation of this allegedly "unilateral" provision of the contract. Accepting Defendant's interpretation would render the contract illusory, preventing summary judgment based on the parties 3-year course of

conduct, which is subject to discovery. DMS' interpretation of the contract, on the other hand, binds Defendant to pay the amounts owed to DMS and tends to prove Plaintiff's second cause of action is valid, again, preventing summary judgment.

Therefore, whether the Court accepts Defendant's interpretation of the Agreement of DMS' interpretation, the Court should deny motion for summary judgment, because there are genuine disputes of material fact as the interpretation of the relevant provisions of the Agreement allegedly conferring unilateral right of termination to Defendant, which, depending on the outcome of this genuine dispute of material fact, may result in the contract is valid, illusory, enforceable, or otherwise.

Based on the foregoing, the Court should not enter summary judgment as to the second cause of action because genuine issues of material fact exist. Fed. R. Civ. P. 56(a).

### 3. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's Third Cause of Action for Violation of Business & Professions Code § 17200, et seq.

Similar to the first and second causes of action, the same genuine disputes of material fact prevent summary judgment as to Plaintiff's third cause of action for violation of the Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200, *et seq.*

Here, Plaintiff's third cause of action for violation of UCL is premised upon the same conduct as the first and second causes of action. (*see* Compl., ECF No. 1, ¶¶ 23-26.) Therefore, Defendant's Motion must be denied based on the genuine disputes of fact, as discussed above.

### B. Genuine Disputes of Material Facts Exist With Respect to the Interpretation and Scope of the Agreement.

There are disputes of material fact with respect to Defendant's interpretation of the Agreement, including, but not limited to, Defendant's interpretation of the Agreement, allegedly giving Defendant the unilateral right to terminate the Agreement.

- 9 -

PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

22cv01184

Defendant moves for summary judgment on all of Plaintiff's three causes of action, arguing that any fraudulent click gives it the right not to pay DMS whatsoever, or at all. It fails however to show any term that expressly says this.

DMS disagrees and, while acknowledging that Zeeto may have the right to judge fraudulent clicks, no language in the contract permits it to not pay for legitimate hits or clicks. (*See, e.g.,* Borghese Decl. ¶ 9.) DMS disputes defendant's apparent interpretation of the agreement between the parties, which Defendant asserts gives it sole discretion to (a) unilaterally terminate the contract based upon fraudulent traffic, or (b) stop payment. (*See* Borghese Decl. ¶ 9.) Under Defendant's apparent interpretation of the agreement, one fraudulent hit is sufficient to allow it to, in its "sole discretion," not pay DMS at all. (*Id.*) The contract does not say that, and DMS would never have agreed to such a one-sided and illusory agreement. (*Id.*) There is no "materiality threshold" within the contract to justify their interpretation. (*Id.*) Defendant has earned monies from traffic generated by DMS, but refuses to compensate DMS for this revenue, as it is required to do, pursuant to the revenue sharing agreement between DMS and Zeeto. (*Id.; see also* Goss Decl., Exh. 1, ¶ 4.) For example, Mr. Goss, in his declaration, admits that there were no problems with the hits over part of the time for which it owes DMS compensation, but Zeeto still refuses to pay even for what it admits is legitimate traffic. (Borghese Decl., ¶ 9; *cf.* Goss Decl. ¶ 14.)

In fact, Section 4 of the Agreement suggests just the opposite. Section 4 of the agreement governs the parties' rights, and it states: ". . .Zeeto's tracking statistics will be used to determine the numbers upon which payment is made." (Borghese Decl., ¶ 10; *accord.,* Goss Decl., Exh. 1, ¶ 4. This provision implies that Defendant Zeeto will pay for valid traffic. To the contrary, DMS has brought this lawsuit, because Defendant has entirely refused to pay *any* of the monies owed to DMS by unilaterally terminating its contract with DMS. (Borghese Decl., ¶ 10.) Defendant, having monetized DMS' traffic, has earned advertising monies from traffic on DMS' platform, and Defendant is liable to DMS for its

PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

22cv01184

share of the revenue earned and kept by Zeeto in violation of the parties' revenue sharing agreement. *Id.*

This is a classic contract interpretation issue which cannot be determined as a matter of law on summary judgment. *See, e.g., Wolf, supra,* 114 Cal.App.4th at 1351.

Furthermore, The Agreement includes an indemnification provision whereby DMS would indemnify Zeeto for any "fraudulent traffic." (Borghese Decl., ¶ 8; *accord* Goss Decl., Exh. 1, ¶ 8.) Specifically, provision 8 of the Agreement, entitled "Indemnity" states as follows:

> You [DMS] agree to indemnify and defend Zeeto, its affiliates, subsidiaries, agents, advertisers, employees, and officers from and against any and all third party losses, liabilities, claims, damages, and costs arising out of or related to: (a) breach of any warranties, representations, covenants, or agreements within this Agreement; (b) the Publisher site, including any content served on the Publisher site that is not served by Zeeto; (c) your [DMS'] use of advertising, methods of generating traffic and any claims deriving thereof, or (d) your [DMS'] use of the Services."

(Goss Decl., Exh. 1, ¶ 8, pp. 4-5.)

However, Zeeto claims that it has the right under the contract to unilaterally stop making all payments to DMS for any traffic generated by DMS, even for non-fraudulent hits so that Zeeto has received 100% of the ad revenue, starting July 2021. (*See, e.g.,* Goss Decl. ¶ 14; *see also,* Defendant's Motion p. 11:1-11.) This is contrary to the terms of the contract, where, if Zeeto identified any bad or otherwise "fraudulent traffic," it would nevertheless still be obligated to pay for all of the revenues earned from "good" hits or traffic, and then to seek indemnification as its sole remedy. (Borghese Decl., ¶ 9.)

Finally, the liquidated damages clause in provision 3(e) of the Agreement, entitled "Damages" contradicts Defendant's interpretation of the Agreement as giving it unilateral authority withhold all monies generated from DMS' monetized traffic, for which Defendant received payments, but is withholding payments to DMS which are owed to DMS pursuant to the revenue sharing provision of the Agreement, embodied in provision 4 of the Agreement, which states, in pertinent portion, that "Zeeto will retain the agreed to

PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

22cv01184

percentage of the revenue for each calendar month and payment will be made from Zeeto to Publisher [DMS] on a net 30 basis." (*See* Goss Decl., Exh. 1, ¶ 4, p. 2.)

These numerous and genuine disputes of material facts militate against summary judgment in Defendant's favor as to any of the causes of action brought by Plaintiff in its Complaint, because, as discussed above, these genuine disputes of material fact relate to the elements of Plaintiff's three causes of action. *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. 242, 248 ("It is substantive law's identification of which facts are critical and which facts are irrelevant that governs."); *accord Clausen v. M/V New Carissa,* 339 F.3d 1049, 1065 (9th Cir. 2003) (In diversity actions, the state law creating the right sued upon governs issues such as the elements of the cause of action, measure of damages, applicable defenses, etc.).

Based on the foregoing, Plaintiff DMS respectfully requests that the Court deny Defendant's instant Motion for Summary Judgment, because issues of material fact exist as to the interpretation and scope of the Agreement.

### C. The Court Should Deny the Summary Judgment, or, Alternatively, Grant a Continuance for Discovery Purposes, Pursuant to Rule 56(d).

Plaintiff DMS maintains that Defendant's motion for summary judgment must be denied, based on the genuine disputes of material facts, as explained above. However, in the unlikely event that the Court is not inclined to deny Defendant's Motion, Plaintiff respectfully requests, in the alternative, that the Court grant it a continuance to conduct discovery to obtain facts essential to justify its opposition. Fed. R. Civ. P. 56(d).

When the opposing party cannot present "facts essential to justify its opposition" to the motion, it may submit an affidavit stating the reasons. The court may either deny summary judgment or grant a continuance for discovery purposes, "or issue any other appropriate order." Fed. R. Civ. P. 56(d). Summary judgment may not be granted until the court first determines the merits of the opposing party's request for continuance under Rule 56(d). *Garrett v. City & County of San Francisco* 818 F2d 1515, 1518-1519 (9th Cir.

- 12 -

1987).

A Rule 56(d) application should be granted where the party opposing summary judgment makes a timely application which specifically identifies relevant information, and where there is some basis for believing that the information sought actually exists. *VISA Int'l Service Ass'n v. Bankcard Holders of America* 784 F2d 1472, 1475 (9th Cir. 1986) (citing prior version of FRCP 56(d)).

Indeed, it is an *abuse* of discretion to deny a continuance where the record shows: (1) the movant *diligently* pursued previous discovery opportunities, and (2) how allowing *additional* discovery would have precluded summary judgment. *Clark v. Capital Credit & Collection Services, Inc.* 460 F3d 1162, 1178-1179 (9th Cir. 2006); *Convertino v. United States Dept. of Justice,* 684 F3d 93, 99-102 (DC Cir. 2012) (reversed for abuse of discretion in denying Rule 56(d) motion). Rule 56(d) motion "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence" (internal quotes omitted). *Id.*

There is no absolute right to a summary judgment in any case. The court has discretion to deny summary judgment wherever it determines that justice and fairness require a trial on the merits: "Neither do we suggest that … the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson, supra,* 477 U.S. at 255.

Probably the most significant reason to hesitate in granting summary judgment is that the posture of the case (e.g., discovery, party's present access to proof) indicates the ruling might be premature. *Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1121 (9th Cir. 1982).

Here, Defendant brought its motion for summary merely less than a week after it filed its Answer. (ECF Nos. 4 & 6; Shabani Decl. ¶¶ 3-4). Plaintiff has had no opportunity to conduct any discovery as to the allegations set forth in Defendant's instant motion for summary judgment, specifically with respect to the course of conduct of the parties, as it

- 13 -

relates to the pertinent provisions of the Agreement at issue in the instant Motion. (Shabani Decl. ¶ 5.) Plaintiff will depose Mr. Goss within the next 30 days to discover the information related to these issues. (*Id.* ¶ 6.) It generally takes the certified stenographer approximately 15 days to provide a transcript of the deposition proceedings.

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion, or in the alternative, continue the hearing on this Motion for a period of 45 – 60 days to allow Plaintiff to conduct the required discovery to obtain facts justifying its opposition. Fed. R. Civ. P. 56(d). (Shabani Decl., ¶ 7.)

## VI. CONCLUSION

This motion for summary judgment must be denied because the language of the Agreement is at worst (for DMS) ambiguous, and at best (for DMS) supports DMS' interpretation. Either way, summary judgment must be denied for this reason and because of the other genuine issues, information and disputes of material fact identified above.

Dated: October 20, 2022

ELLIS LAW GROUP LLP

By _____
Omid Shabani
Attorney for Plaintiff
DIGITAL MEDIA SOLUTIONS, LLC