Mark E. Ellis - 127159
Omid Shabani - 267447
ELLIS LAW GROUP LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
oshabani@ellislawgrp.com

Attorneys for Plaintiff DIGITAL MEDIA SOLUTIONS, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ZEETOGROUP, LLC, <br><br> Defendant. | Case No.: 22CV01184 JLS-AHG <br><br> **DECLARATION OF FERNANDO BORGHESE IN SUPPORT OF PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO DEFENDANT ZEETOGROUP'S MOTION FOR SUMMARY JUDGMENT** <br><br> DATE: November 3, 2022 <br> TIME: 1:30 p.m. <br> DEPT: 4D <br> HON. JANIS L. SAMMARTINO |

I, Fernando Borghese, declare that:

1. The statements made in this declaration are made from my own personal knowledge, understanding and observations. If called upon to testify thereto, I am competent to do so.

2. I am the Co-Founder and Chief Operating Officer of Digital Media Solutions. I am responsible for the day-to-day leadership and management of the company, encompassing all of its lines of business, and I have acted as such for the last ten years.

- 1 -

DECLARATION OF FERNANDO BORGHESE IN SUPPORT OF PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO DEFENDANT ZEETOGROUP'S MOTION FOR SUMMARY JUDGMENT

22cv01184

3.     I have personally supervised the negotiations of various agreements between Digital Media Solutions, LLC ("DMS"), and our strategic partner, Zeetogroup, LLC ("Zeeto"), the Defendant in the present lawsuit. I am personally familiar with, and know Mr. Stephan Goss, and I possess first-hand personal knowledge of the contractual negotiations and transactions between the parties and the courses of conduct of DMS and Zeeto after the agreements became effective.

4.     There have been several agreements entered into between Zeeto and DMS. I am personally familiar with all of them. The particular contract at issue in this litigation was entered into on August 23, 2018 between DMS and Zeeto and is referenced to as the "Zeeto Publisher Terms of Service" agreement. The parties agreed that DMS would "manage" various consumer websites using Zeeto advertising technology. DMS' websites generate leads in conjunction with Zeeto advertising technology. Pursuant to the parties' agreement, Zeeto and DMS agreed to share revenue earned by Zeeto's advertising activities on DMS' platforms.

5.     Prior to July 2021, our relationship progressed in a smooth and seemingly mutually beneficial basis; Zeeto paid all monies owed to DMS pursuant to the parties' revenue-sharing agreement. There was no time when Zeeto alerted DMS to any claims arising from alleged issues as to the validity or *bona fides* of the "hits" on our landing pages, much less did they raise any issue about so-called "fraudulent" traffic.

6.     However, starting in or around late 2021, Zeeto claimed, for the first time, that there was "fraudulent traffic" hitting DMS' web platforms. I investigated this assertion,

- 2 -

DECLARATION OF FERNANDO BORGHESE IN SUPPORT OF PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S
OPPOSITION TO DEFENDANT ZEETOGROUP'S MOTION FOR SUMMARY JUDGMENT

and DMS denies Zeeto's claim and is unaware of any such "fraudulent" traffic. DMS has itself not generated such traffic and is unaware of any third party doing so.

7. Despite its claim of "fraudulent traffic," Zeeto has never identified to DMS any "fraudulent clicks" or "hits," much less with particularity. To be clear, Zeeto has not identified to DMS even one single click or hit which it claims to be "fraudulent." DMS is not aware of any "fraudulent traffic." DMS' business practices under the agreement have not changed from periods when Zeeto found DMS business practices acceptable and compensable. Zeeto has not provided any particular information with respect to its claim of "fraudulent traffic," such as how many clicks have occurred, or the origination, or the identity of such clicks or hits.

8. The parties' contract in question includes an indemnification provision whereby DMS would indemnify Zeeto for any "fraudulent traffic." However, Zeeto claims that it has the right under the contract to unilaterally stop making all payments to DMS for any traffic generated by DMS, even for non-fraudulent hits so that Zeeto has received 100% of the ad revenue, starting July 2021. This is contrary to the terms of the contract, where, if Zeeto identified any bad or otherwise "fraudulent traffic," it would nevertheless still be obligated to pay for all of the revenues earned from "good" hits or traffic, and then to seek indemnification as its sole remedy.

9. DMS disputes Zeeto's apparent interpretation of the agreement between Zeeto and DMS which Zeeto asserts gives it sole discretion to (a) unilaterally terminate the contract based upon fraudulent traffic, or (b) stop payment. Under Zeeto's apparent

interpretation of the agreement, one fraudulent hit is sufficient to allow it to, in its "sole discretion," not pay DMS at all. The contract does not say that, and DMS would never have agreed to such a one-sided and illusory agreement. There is no "materiality threshold" within the contract to justify their interpretation. Zeeto has earned monies from traffic generated by DMS, but refuses to compensate DMS for this revenue, as it is required to do, pursuant to the revenue sharing agreement between DMS and Zeeto. For example, Mr. Goss, in his declaration, admits that there were no problems with the hits over part of the time for which it owes DMS compensation, but Zeeto still refuses to pay even for what it admits is legitimate traffic.

10. Even assuming there was merit to Zeeto's assertions relating to the quality of the clicks, DMS is not seeking any monies for any "fraudulent" or bad clicks. Section 4 of the agreement governs the parties' rights, and it states: ". . .Zeeto's tracking statistics will be used to determine the numbers upon which payment is made." To the contrary, DMS has brought this lawsuit, because Zeeto has entirely refused to pay *any* of the monies owed to DMS by unilaterally terminating its contract with DMS. Zeeto has earned advertising monies from traffic on DMS' platform, and Zeeto is liable to DMS for its share of the revenue earned and kept by Zeeto in violation of the parties' revenue sharing agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 20, 2022

FERNANDO BORGHESE

- 4 -