Mark E. Ellis – 127159
*mellis@ellislawgrp.com*
Lawrence K. Iglesias – 303700
*liglesias@ellislawgrp.com*
ELLIS LAW GROUP, LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821

Attorneys for Plaintiff DIGITAL MEDIA SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITAL MEDIA SOLUTIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZEETOGROUP, LLC,<br><br>    Defendant. | Case No.: 22-cv-01184 AHG<br>(Consolidated with No. 3:22-cv-01396 AHG)<br><br>**PLAINTIFF DIGITAL MEDIA SOLUTIONS, LLC'S OPPOSITION TO DEFENDANT ZEETOGROUP'S MOTION FOR SUMMARY JUDGMENT**<br><br>*[Declarations of Fernando Borghese and Lawrence K. Iglesias, and exhibits thereto, filed concurrently herewith]*<br><br>**DATE:    August 9, 2023**<br>**TIME:    1:30 p.m.**<br>**DEPT:    5A**<br>**JUDGE:    Hon. Allison H. Goddard** |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 2

II.     STATEMENT OF FACTS ...................................................................... 3

III.    PROCEDURAL HISTORY ..................................................................... 7

IV.     LEGAL STANDARD FOR SUMMARY JUDGMENT ........................ 8

V.      ARGUMENT ........................................................................................... 9

    A. Disputes of Material Facts Exist With Respect to Defendant's
    Allegations of "Fraudulent Traffic." ................................................. 10

        1. Genuine Disputes of Material Fact Preclude Summary Judgment
        on Plaintiff's First Cause of Action for Breach of Written Contract. ......... 11

        2. Genuine Disputes of Material Fact Preclude Summary Judgment on
        Plaintiff's Second Cause of Action for Breach Implied Duty of
        Good Faith and Fair Dealing. ...................................................... 12

        3. Genuine Disputes of Material Fact Preclude Summary Judgment on
        Plaintiff's Third Cause of Action for Violation of Business &
        Professions Code § 17200, et seq. ............................................... 13

    B. Genuine Disputes of Material Facts Exist With Respect to the
    Interpretation and Scope of the Agreement. ..................................... 16

VI.     CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) ............................................................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................8, 9, 21

*Blanks v. Seyfarth Shaw LLP*, 171 Cal.App.4th 336 (2009) ...........................................15

*Braxton-Secret v. A. H. Robins, Co.*, 769 F.3d 528 (9th Cir. 1985) ...............................9

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
2 Cal.4th 342 (1992) ...........................................................................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal.4th 163 (1999) .........................................................................................16

*Chern v. Bank of America* 15 Cal.3d 866 (1976) ............................................................16

*Clausen v. M/V New Carissa*, 339 F.3d 1049 (9th Cir. 2003) ........................................21

*Cobb v. Ironwood Country Club*, 233 Cal.App.4th 960 (2015) .....................................14

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000) ......................18

*Cox v. Hollywood Film Enterprises*, 109 Cal.App.2d 320 (1952) ..................................14

*Darbun Enterprises, Inc. v. San Fernando Community Hosp.*,
239 Cal.App.4th 399 (2015) ...............................................................................12

*Firman v. Life Ins. Co. of North America*, 684 F.3d 533 (5th Cir. 2012) .......................8

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 119 (9th Cir. 2014) ...........9

*Ghirardo v. Antonioli*, 14 Cal.4th 39 (1996) ..................................................................17

*In re Firearm Cases*, 126 Cal.App.4th 959 (2005) .........................................................16

*Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965 fn.3 (1997) ......................................15

*McMillion v. City of NY*, 711 F.3d 120 (2nd Cir. 2013) ...................................................9

*McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009) ....................................9

*People ex rel. City of Santa Monica v. Gabriel*, 186 Cal.App.4th 882 (2010) ...............16

*People v. Cappuccio, Inc.* 204 Cal.App.3rd 750 (1988) ..................................................16

*People v. McKale* (1979) 23 Cal.3d 626 ..........................................................................17

*Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632 (1996) ...................................15

*Racine & Laramie, Ltd. v. Department of Parks & Recreation,*
 11 Cal.App.4th 1026 (1992) ........................................................................13

*Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284 (1993) .............17

*San Mateo Union High School Dist. v. County of San Mateo,*
 213 Cal.App.4th 418 (2013) .......................................................................12

*SEC v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008) ......................................9

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938 (N.D. Cal. 2015) ...........17

*Wolf v. Superior Court,* 114 Cal.App.4th 1343 (2004) ...............................11, 13, 20

**Statutes**

California Business & Profession Code § 17200 ...............................................13

California Civil Code § 1654 ......................................................................11

California Civil Code § 3521 ......................................................................16

**Other Authorities**

1 Witkin, *Summary 11th Contracts* § 229 (2022) ............................................13

Fed. R. Civ. Pro. 56(a); Schwarzer, et al. *Cal. Prac. Guide: Federal Civ.*
 *Proc. Before Trial*, §§ 14.1, *et seq.* (Thomson Reuters/Rutter Group 2022) ...............8

Stern, *Business & Professions Code Section 17200 Practice* § 3:52
 (Rutter Group March 2023 Ed.) ....................................................................14

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................13

# I.  INTRODUCTION

Defendant Zeetogroup, LLP's ("Defendant" or "Zeeto") instant motion for summary judgment must be denied because of genuine disputes of material fact, including, but not limited to:

1.  Whether genuine dispute of material fact as to the parties' interpretation of the pertinent provisions of the Agreement between the Parties. (*Compare, e.g.,* Declaration of Stephan Goss ("Goss Decl."), ¶¶ 14-15 *with* Declaration of Fernando Borghese ("Borghese Decl."), ¶¶ 5-9.)

2.  Whether the parties' course of conduct shows that their interpretation of the contract does not support Defendant's position, in that Plaintiff maintains that Defendant is liable for all of the valid traffic hits that it received during the months in dispute. (*Compare, e.g.,* Goss Decl., *passim, with* Declaration of Lawrence K. Iglesias ("Iglesias Decl.") ¶ 5; Exhibit 4, excerpts from the July 24, 2023 deposition of Stephan Goss, at pp. 24:4-22, 56:1-12, 70:18-71:21.)

3.  Whether Defendant can unilaterally terminate the Agreement retroactively, and thus, refuse to pay. (*Compare, e.g.,* Goss Decl., ¶¶ 14-15 *with* Borghese Decl., ¶¶ 3-9.)

4.  Whether there was any "fraudulent traffic" or clicks. (*Compare, e.g.,* Goss Decl., ¶¶ 5-6, 14-15 *with* Borghese Decl., ¶¶ 1-7.)

5.  Whether any alleged "fraudulent traffic" was attributable, whether directly or indirectly, to Plaintiff. (*See, e.g.,* Exh. 4, at pp. 49:25-55:9, 60:23-66:23.)

To be clear, Plaintiff Digital Media Solutions, LLC ("Plaintiff" or "DMS") brings this lawsuit to collect or otherwise disgorge from Zeeto monies owed to DMS for all of the valid traffic for which Defendant admittedly was paid, but is withholding payment of monies owed to Plaintiff as a penalty (*See, e.g.,* Exh. 4, at pp. 58:3-5, 60:18-22, 84:5-6.) Plaintiff does not seek to enforce the Agreement and seek to be paid as to any "fraudulent traffic." Plaintiff's position is not only supported by the law of contract interpretation, but also is corroborated by the parties' course of conduct.

The terms of the parties' Agreement expressly provide that Defendant may use its software to detect "fraudulent traffic," suggesting that Defendant would eliminate such traffic but pay for valid traffic—a provision which directly contradicts Defendant's current contractual interpretation put forward in its motion for summary judgment. It also contradicts and renders as surplusage the Agreement's indemnity and liquidated damages provisions. According to Defendant's Motion, the Agreement allows it to withhold all payment from DMS for valid traffic, in its "sole discretion," by unilaterally terminating the Agreement. Such a forfeiture interpretation of the Agreement is not only contradicted by the provisions of the Agreement, but also would render the Agreement illusory in derogation of California Civil Code § 1442 ("[a] condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."). Defendant's "forfeiture" interpretation of the Agreement is not supported by the parties' prior course of dealing, as well as general canons of contract interpretation, and the covenant of good faith and fair dealing.

## II.    STATEMENT OF FACTS

The parties here, Plaintiff DMS and Defendant Zeeto, have had a mutually beneficial relationship with each other since as early as 2015. (Borghese Decl., ¶¶ 1-4.)

On or about August 23, 2018, the parties entered into the agreement at issue here; namely, the "Zeeto Publisher Terms of Service" ("Agreement"). (Borghese Decl. ¶ 3; *see also* Goss Decl., Exh. 1.)  The parties' Agreement is based on a standard publisher agreement drafted by Zeeto's attorneys; Stephan Goss, President and Chief Executive Officer of Zeeto, could not recall whether the Agreement contained any deviations from Zeeto's standard publisher agreement. (Exh. 4, at 32:2-33:13; Goss Decl., ¶ 1.)

The parties' Agreement included a revenue sharing provision, which required payments to DMS from revenue generated by DMS' traffic, on a net 30 basis.  (Goss Decl., Exh. 1, at p. 2 ¶ 4.)

Section 4 of the Agreement provides:

- 3 -

4. **Payment.** By agreeing to allow Zeeto to monetize your traffic, Zeeto will pay you based on a revenue share of the revenues generated on behalf of Publisher by the Zeeto Technology. Zeeto will retain the agreed to percentage of the revenue for each calendar month and payment will be made from Zeeto to Publisher on a net 30 basis for the remainder of the revenue. The revenue share percentage and other terms applicable to monetizing and revenue sharing will be presented to you in the Zeeto Platform, if applicable. The Zeeto Platform also includes reporting, which will provide information regarding transactions and other information regarding performance.

You acknowledge and agree that Zeeto's ***tracking statistics will be used to determine the numbers upon which payment is made. Zeeto will not pay Publisher in the case of (as Zeeto may determine in its sole discretion): spam, fraud***, submission of false leads/data, violation of this Agreement, and any other way the Publisher (or a third party on Publisher's behalf) may use to artificially inflate revenues or disadvantage advertisers in any way. (Emphasis added.)

(Goss Decl., Exh. 1, at p. 2, ¶ 4.)

While the Agreement contemplates Zeeto possessing the discretion to determine whether a click or hit is not valid (such as by a "bot") and not pay for *that* click, Section 4 indicates that DMS will be compensated for real clicks or hits. (*Id.*) More importantly, there is no term in the Agreement that gives Defendant the unilateral right to withhold payment from DMS entirely for non-fraudulent hits, much less to refuse to pay at all. No such forfeiture term exists and cannot fairly be read into the Agreement. (*Id.*)

Notably, under the Agreement, Zeeto was not monetizing mere traffic (hits) on DMS-published websites, but rather, only when Zeeto's advertisers were paying for leads generated by DMS. Once the potential customer not only landed on the relevant website (a hit) but moved past the stage to actually engage with an advertiser. (Exh. 4, at 24:14-17, 25:13-26:16.)

For three years, the Agreement worked well for the parties. (Borghese Decl., ¶¶ 3-4.) However, in or about late 2021, after DMS informed Zeeto it was going to create its own platform, Zeeto unilaterally withheld monies owed to DMS, claiming that alleged "fraudulent traffic" was identified on DMS' traffic. (*Id.* ¶ 5.)

- 4 -

DMS denies any allegation of having caused "fraudulent" traffic. (*Id.* ¶¶ 5-6.)

Nevertheless, Zeeto flatly refused to pay DMS, not simply for the hits that, according to Zeeto, were fraudulent, but it refused to pay for any of the revenues it received from any of the leads generated by DMS for which Zeeto received payment. (*Id.* ¶¶ 8-9.)

Prior to the instant dispute, Zeeto had earlier determined there had been fraudulent traffic on websites published by DMS based upon "spikes" in traffic during 2018, 2019, and 2020. On these prior occasions, rather than forfeiting the payment term of the Agreement, and withholding all payment from DMS that Zeeto had received, Zeeto worked in collaboration with DMS to identify the source of the fraudulent traffic (typically a third-party) so as to eliminate the entity's influence on DMS' traffic. (Exh. 4, at pp. 56:1-12, 70:18-71:21.)

During each of these prior instances of Zeeto detecting fraudulent traffic and working with DMS to resolve the problem, Zeeto still paid DMS under the Agreement for the valid hits from its advertisements. (*Id.* at pp. 24:4-22, 56:1-12, 70:18-71:21.)

In or around 2021, DMS informed Zeeto that DMS was going to use its own advertising platform instead of Zeeto's. (*Id.*, at p. 30:12-25.) It was only after DMS informed Zeeto that DMS was switching to its own advertising network that most of the fraudulent traffic about which the parties disagree occurred. (*Id.*, at pp. 30:12-31:13.) According to Mr. Goss, DMS and Zeeto had a good relationship until DMS informed Zeeto it was switching from Zeeto's advertising network software to its own advertising network software. (*Id.*, at pp. 63:14-64:9.) Zeeto made little or no money off ad campaigns with DMS during the summer of 2021, as by that time DMS had switched to its own advertising network. (*Id.*, at pp. 78:12-16, 79:13-20, 80:15-24.) This appears to be the true reason of Zeeto withholding payment from DMS for even valid hits.

All business between the parties subsequently ceased. (*Id.*, at p. 41:12-15.)

The Agreement contains an indemnification provision, but Zeeto never requested any indemnification from DMS for any "fraudulent traffic." Instead, Zeeto unilaterally

- 5 -

withheld _all_ payments to DMS, based on its unilateral and unsubstantiated allegations of "fraudulent traffic." (Borghese Decl., ¶¶ 7-8.) Zeeto did not identify with particularity which or what percentage of the traffic was allegedly "fraudulent," and instead, has simply withheld all payments to DMS, despite the fact that, having monetized DMS' traffic, Zeeto has profited from traffic generated by DMS. (_Id._, at ¶¶ 6-9; Goss Decl., ¶ 14; Iglesias Decl., Exh. 4, at pp. 80:2-12.)

Zeeto has not been confronted by one single advertiser about the spike in traffic on DMS-published websites. (Exh. 4, at p. 75:1-6.) During his deposition, Mr. Goss could not name a single person who has called Zeeto's reputation into question over this lawsuit. (_Id._, at pp. 76:6-77:11.) There is no direct evidence Zeeto has lost any revenue as a result of any conduct of DMS. (_Id._, at pp. 78:12-16, 79:10-20.)

The Agreement also contains a liquidated damages clause in the event Zeeto determines the publisher, i.e., DMS violates Section 3(d) (entitled "Deceptive Practices"). (Goss Decl., Exh. 1, p. 2, ¶ 3(e).) However, Zeeto has <u>never</u> demanded liquidated damages under its standard publisher agreement from any publisher other than DMS. (Iglesias Decl., Exh. 4, at 40:1-41:11.)

Section 3(d) of the Agreement, entitled "Deceptive Practices," states:

> Zeeto reserves the right to terminate this Agreement and investigate Publisher for deceptive practices at its sole discretion. "Deceptive Practices" for the purposes of this Agreement include, but are not limited to, the following:
> i. Using fake redirects, automated software, fraud, or acting in any way to generate false clicks of leads ("Click Fraud");
> ii. Generating Multiple leads using proxy servers;
> iii. Using iFrames, hidden frames, or redirects; and/or
> iv. Any method in which you use the Zeeto Platform in an attempt to increase your revenue in a dishonest or deceitful way that harms the quality of the Zeeto Platform and it's [sic] users.

(Goss Decl., Exh. 1, at p. 2, ¶ 3(d).)

There is no evidence that DMS violated <u>any</u> portion of Section 3(d) of the Agreement. (Iglesias Decl., Exh. 4, at 49:25-55:9, 60:23-66:23.) Indeed, Mr. Goss

- 6 -

speculates, based upon Zeeto's investigation into the alleged fraudulent traffic, that a third-party affiliate of DMS may have been responsible for the spike in traffic. (*Id.*, at p. 52:6-18.) Mr. Goss admitted that "[i]t is entirely possible that DMS did not know the methods" by which the allegedly fraudulent traffic was being generated. (*Id.*, at p. 52:1-5.) Mr. Goss admitted he "do[es] not have any direct knowledge of who it was" that was responsible for the alleged fraudulent traffic, but his "suspicion is that DMS was not the one doing it." (*Id.*, at p. 54:11-22.)

After months of attempting to resolve Zeeto's refusal to pay, DMS filed this action. Zeeto subsequently filed an action in state court against DMS and others, which DMS removed to this Court.

### III.    PROCEDURAL HISTORY

Plaintiff filed this Complaint on August 12, 2022 (ECF. No. 1). Defendant filed its Answer on September 7, 2022 (ECF No. 4). On September 13, 2022, Defendant filed its original motion for summary judgment (ECF. No. 6) which was denied as moot on November 2, 2022 (ECF No. 18).

On January 23, 2023, Plaintiff filed its First Amended Complaint (ECF No. 24).

On February 6, 2023, Defendant filed its Answer to Plaintiff's First Amended Complaint (ECF No. 25).

On March 22, 2023, the Court issued an Order Granting Joint Motion for Setting Briefing Schedule for Renewed Summary Judgment Motion (ECF No. 35).

On May 17, 2023, the Court issued an Order Consolidating Related Actions, granting the parties' joint motion and ordering *Digital Media Sols. v. Zeetogroup*, Case No. 3:22-cv-1184-AHG the lead case, consolidated with *Zeetogroup v. Digital Media Sols., et al.*, Case No. 3:22-cv-1396-AHG (ECF No. 22).

On July 12, 2023, Defendant filed its renewed motion for summary judgment (ECF No. 39).

As explained below, Defendant's motion for summary must be denied, because disputes of material facts exist between the parties with respect to the interpretation of the

contract, including but not limited to the course of dealing between the parties under the contract, as well as the allegations of "fraudulent traffic," which DMS denies.

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

The rules relating to summary judgment are well established. A motion for summary judgment provides a procedure for penetrating the pleadings without the need for trial where "there is not a genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); Schwarzer, et al. *Cal. Prac. Guide: Federal Civ. Proc. Before Trial*, §§ 14.1, *et seq.* (Thomson Reuters/Rutter Group 2022). The summary judgment procedure is not disfavored, "but on the other hand, because it deprives the non-moving party of her right to a jury trial, strict standards apply; it is a motion with strict requirements to the moving party. *See* Schwarzer, *supra*, § 14.31 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)); Schwarzer, *supra*, § 14.204. Indeed, a court has the discretion to deny the motion even where the Rule 56 standards are met "if it believes that the better course would be to proceed for a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Firman v. Life Ins. Co. of North America*, 684 F.3d 533, 538 (5th Cir. 2012).

In considering the motion, the court views the evidence presented in the light most favorable to the opposing party. *Anderson, supra*, 477 U.S. at 255 ("the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); *accord Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 119, 1125 (9th Cir. 2014). Likewise, Summary judgment must be denied where an issue of material fact is disputed and cannot be resolved without judging the credibility of competent witnesses. *See, e.g., SEC v. M&A West, Inc.*, 538 F.3d 1043, 1054-1055 (9th Cir. 2008).

Finally, all reasonable inferences must be drawn in favor of the opposing party; this is true regardless of whether the facts are disputed or undisputed; the non-movants version of disputed issues of fact is presumed correct. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009); *McMillion v. City of NY*, 711 F.3d 120, 123 (2nd Cir. 2013).

In this regard, even where the basic facts are undisputed, if reasonable minds could differ on the inference to be drawn from those facts, then summary judgment should be denied. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Fresno Motors, LLC, supra*, 771 F.3d at 1125; *Braxton-Secret v. A. H. Robins, Co.*, 769 F.3d 528, 531 (9th Cir. 1985) (where conflicting inferences arise as state of mind, motive, intent, knowledge, truthfulness summary judgment improper).

## V.    ARGUMENT

The Court should deny Zeeto's motion for summary judgment because of numerous disputed facts regarding the parties' interpretation of the Agreement, the existence and source of the alleged fraudulent traffic, whether Zeeto's conduct violates the implied covenant of good faith and fair dealing, whether Zeeto abused its "sole discretion" to withhold all portions of the revenue due to DMS based upon the parties' prior course of conduct under the Agreement, and whether Zeeto's act of doing so constitutes an unfair business act or practice under the UCL.

DMS' complaint alleges three causes of action for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) violation of the UCL (unfair business practices). While the purpose of a motion for summary judgment is to "penetrate" the pleadings, where, as here, triable issues of fact clearly exist, this is the beginning and end of the analysis.

Here, among other things, the parties wholly disagree on how to interpret the Agreement's terms as to their respective rights and obligations if fraudulent clicks hit the DMS websites.[1]

Zeeto moves for summary judgment on all three causes of action, arguing that any fraudulent click gives it the right not to pay DMS whatsoever, or at all. It fails however to show any term that expressly says this. As the saying goes, "one does not hide elephants in mouseholes."

---

[1] This assumes there have ever been fraudulent clicks, which Zeeto has failed to establish in its motion with admissible evidence. (*See* DMS' Objections to Evidence.)

- 9 -

DMS disagrees and, while acknowledging that Zeeto may have the right to judge fraudulent clicks, no language in the contract permits it to not pay for legitimate hits or clicks. Section 4 of the Agreement suggests just the opposite.

This is a classic contract interpretation issue which cannot be determined as a matter of law on summary judgment. *See, e.g., Wolf v. Superior Court,* 114 Cal.App.4th 1343, 1351 (2004) ("[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.").

Here, the prior course of conduct between the parties from 2018 through 2020 indicates Zeeto has not honored its contractual obligations, much less in good faith. Specifically, the parties' history of working together to identify and eliminate any source of fraudulent traffic upon Zeeto's discovery or suspicion of such (typically evinced by an unusual spike in traffic) and continuing to pay DMS for leads Zeeto monetized <u>rather than Zeeto unilaterally terminating the contract and refusing to pay DMS any amounts due for leads Zeeto monetized through DMS-published websites</u>. The facts are more suggestive that Zeeto decided to unfairly withhold payment due to DMS, for which DMS has a vested interest based upon its generation of leads to Zeeto's advertisers, which Zeeto in turn monetized, out of retaliation against DMS for switching to its own advertising network.

## A. Disputes of Material Facts Exist With Respect to Defendant's Allegations of "Fraudulent Traffic."

First and foremost, DMS denies any allegation of "fraudulent" traffic on its platforms. Here, Zeeto has failed to proffer any admissible evidence that there have been fraudulent clicks (and DMS disputes there have been), a condition precedent to summary judgment.

Specifically, DMS denies Zeeto's claim that there was "fraudulent" traffic. (Borghese Decl., ¶¶ 5-6.) Defendant has failed to identify to DMS any "fraudulent clicks" or "hits." (*Id.*) Defendant has not provided any particular information with respect to its

claim of "fraudulent traffic," such as how many clicks have occurred, or the origination, or the identity of such allegedly "fraudulent" traffic. (*Id.*)

### 1. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's First Cause of Action for Breach of Written Contract.

The Court should deny Zeeto's motion for summary judgment as to Plaintiff's first cause of action for breach of contract, because genuine disputes of material fact exist as to the proper interpretation of the contract and the parties' course of conduct. "In cases of uncertainly…the language of the contract should be interpreted most strongly against the party who cased the uncertainty to exist." Cal. Civ. Code § 1654.

"The essential elements of a claim of breach of contract, whether express or implied, are the contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and the resulting damages to plaintiff." *San Mateo Union High School Dist. v. County of San Mateo,* 213 Cal.App.4th 418, 439 (2013); *Darbun Enterprises, Inc. v. San Fernando Community Hosp.*, 239 Cal.App.4th 399, 409 (2015).

Here, there is no dispute that the Agreement is a contract between the parties. Furthermore, Zeeto admits that DMS performed under the Agreement. (*See* Goss Decl. ¶ 14 ("Zeeto does not dispute that DMS sent traffic during the months in question.")) Also, the resulting damages to DMS are clear and admitted by Zeeto. (*Id.* ("Zeeto does not dispute that if the traffic had been free of fraud (as determined by Zeeto), then Zeeto would owe $944,176.27.").)

However, there are genuine disputes of material fact as to interpretation of provisions of the Agreement. DMS disagrees and, while acknowledging that Zeeto may have the right to judge fraudulent clicks, no language in the contract permits it to not pay for legitimate hits or clicks. Section 4 of the Agreement suggests just the opposite. Much less where, as here, Mr. Goss has admitted that Zeeto does not know the source of the alleged fraudulent traffic and further admitted that DMS may not even know how the alleged fraudulent traffic was generated.

This is a classic contract interpretation issue which cannot be determined as a matter of law on summary judgment. *See, e.g., Wolf, supra,* 114 Cal.App.4th at 1351.

**2.      Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's Second Cause of Action for Breach Implied Duty of Good Faith and Fair Dealing.**

Under the circumstances, summary judgment would be particularly inappropriate to Plaintiff's second cause of action for breach of the covenant of good faith and fair dealing.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." "[] The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371–372 (1992) internal citations omitted.)

'In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" *Racine & Laramie, Ltd. v. Department of Parks & Recreation,* 11 Cal.App.4th 1026, 1031–1032 (1992) (internal citations omitted.)

"When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights." *Cobb v. Ironwood Country Club,* 233 Cal.App.4th 960, 963 (2015).

Here, Zeeto interprets the contract to "not pay Publisher" as Zeeto determines in its "sole discretion." (Defendant's Motion, at p. 8:23-25.)

Zeeto's interpretation of the Agreement not only runs it afoul of the implied covenant of good faith and fair dealing, but also, such an interpretation would make the

- 12 -

Agreement entirely illusory.

Where a principal reserves the election to approve or reject a contract made by his or her agent, no contract results until the approval. 1 Witkin, *Summary 11th Contracts* § 229 (2022). The same defect is present where one party reserves the unqualified right to cancel or withdraw from an agreement at his or her pleasure. *Id.* § 231; *Cox v. Hollywood Film Enterprises*, 109 Cal.App.2d 320, 325 (1952).

Here, there is a genuine dispute of material fact as to interpretation of this allegedly "unilateral" provision of the contract. Accepting Zeeto's interpretation would render the contract illusory, preventing summary judgment based on the parties 3-year course of conduct, which is subject to discovery. DMS' interpretation of the contract, on the other hand, binds Zeeto to pay the amounts owed to DMS and tends to prove Plaintiff's second cause of action is valid, again, preventing summary judgment.

Therefore, whether the Court accepts Zeeto's interpretation of the Agreement of DMS' interpretation, the Court should deny motion for summary judgment, because there are genuine disputes of material fact as the interpretation of the relevant provisions of the Agreement allegedly conferring unilateral right of termination to Zeeto, which, depending on the outcome of this genuine dispute of material fact, may result in the contract is valid, illusory, enforceable, or otherwise.

Based on the foregoing, the Court should not enter summary judgment as to the second cause of action because genuine issues of material fact exist. Fed. R. Civ. P. 56(a).

**3.     Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiff's Third Cause of Action for Violation of Business & Professions Code § 17200, et seq.**

Similar to the first and second causes of action, the same genuine disputes of material fact prevent summary judgment as to Plaintiff's third cause of action for violation of the Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200, *et seq.*

"UCL causes of action include any unlawful, unfair, or fraudulent business act or practice…. An act may violate the UCL even if the unlawful practice affects only one

- 13 -

victim." *Blanks v. Seyfarth Shaw LLP*, 171 Cal.App.4th 336, 363-364 (2009) (internal citations, quotation marks, and some text omitted); *Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965, 969 fn.3 (1997) ("[t]he plain meaning of the [1992] amendment [to the UCL], as enacted, is that the [UCL] now covers single acts of misconduct"); *accord Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 653-643 (1996) (same).

A "business act or practice" under the UCL is defined broadly, including an act in which "the act was made possible by the parties' commercial relationship and occurred only during business-related encounters." *People ex rel. City of Santa Monica v. Gabriel*, 186 Cal.App.4th 882, 888 (2010) (a "business act" under the UCL has "an integral connection with commercial activity and constitut[es] business conduct.").

"A business practice is not immune from attack under § 17200 merely because it has become customary or habitual either for the defendant or the industry of which it is a part." Stern, *Business & Professions Code Section 17200 Practice* § 3:52 (Rutter Group March 2023 Ed.); *Chern v. Bank of America* 15 Cal.3d 866, 876 (1976); *People v. Cappuccio, Inc.* 204 Cal.App.3rd 750, 761-763 (1988).

"[T]he [UCL] does more than just borrow [unlawful acts]. The statutory language referring to "any unlawful, unfair *or* fraudulent practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (bracketed text added for clarity only). In *Cel-Tech*, the California Supreme Court decided that conduct that is not "unlawful" can nevertheless be "unfair" under certain circumstances. Stern*, supra, Business & Professions Code Section 17200 Practice* § 3:115. A claim under the UCL is an equitable claim and can exist independent of any contractual relationship, such as here. *See, e.g., In re Firearm Cases*, 126 Cal.App.4th 959, 981 (2005) ("we do not believe a UCL violation may be established without a link between a defendant's business and the alleged harm.").

However, even where there is a contractual relationship between the parties, such as here, a UCL violation can occur based upon unfair or unlawful conduct relating to the

- 14 -

respective parties to the contract. *See, e.g., Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 968 (N.D. Cal. 2015) ("a plaintiff may bring a UCL claim even where it overlaps with a concurrently brought breach of contract and breach of the implied covenant of good faith and fair dealing claim"); *see also, e.g., People v. McKale* 23 Cal.3d 626, 634-635 (1979). Likewise, asserting a contractual right that one does not have can violate the UCL. *See, e.g., id.; see also Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 1298-1299 (1993).

Here, Plaintiff's third cause of action for violation of UCL is premised upon the same conduct as the first and second causes of action. (*see* Compl., ECF No. 1, ¶¶ 23-26.) However, Plaintiff's UCL equitable claim under the UCL for restitution and disgorgement is based upon, *inter alia*, Zeeto's failing or refusal to pay DMS for revenue DMS generated using Zeeto's platform between July of 2021 and September of 2021 for which Zeeto has no valid excuse. "Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another." *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996).

Instead, Zeeto relies solely on its patently unfair act of withholding <u>all</u> monies due to DMS on the basis that <u>some or any amount</u>, irrespective of the amount or significance, of the traffic Zeeto monetized from DMS' websites was purportedly "fraudulent" – a determination made by Zeeto in its "sole discretion" as Zeeto purports it has the contractual right to exercise. But the gravamen of DMS' UCL claim exists independently of the four corners of the parties' contract: here, DMS' use of Zeeto's platform generated substantial revenue to Zeeto's benefit, which was to be shared with DMS. Instead, Zeeto invoked a contractual term in an unfair and draconian manner to retain and wrongfully withhold <u>any</u> benefit to DMS. The UCL is not limited to the recovery of money that was once in the plaintiff's possession, but also encompasses the recovery of money in which the plaintiff has a vested interest. *See, e.g., Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178 (2000).

Here, DMS had a vested interest in its portion of the revenue it generated which

- 15 -

Zeeto has wrongfully withheld based upon its unreasonable and unfair application of contract terms, which are inconsistent with the most reasonable interpretation of the contract, and with general principles of equity. Cal. Civ. Code § 3521 ("He who takes the benefit must bear the burden"). Therefore, Zeeto's Motion must be denied based on the genuine disputes of fact, as discussed above.

**B.     Genuine Disputes of Material Facts Exist With Respect to the Interpretation and Scope of the Agreement.**

There are disputes of material fact with respect to the interpretation of the Agreement, including, but not limited to, Zeeto's interpretation of the Agreement, allegedly giving Zeeto the unilateral right to terminate the Agreement and refuse to pay any amount to DMS, which Zeeto admits would be owed to DMS absent alleged fraud.

Zeeto moves for summary judgment on all of DMS' three causes of action, arguing that any fraudulent traffic gives it the right not to pay DMS whatsoever, or at all. It fails however to show any term that expressly says this.

DMS disagrees and, while acknowledging that Zeeto may have the right to judge fraudulent clicks, no language in the contract permits it to not pay for legitimate hits or clicks. (*See, e.g.,* Borghese Decl. ¶¶ 8-9.) DMS disputes Zeeto's apparent interpretation of the agreement between the parties, which Zeeto asserts gives it sole discretion to (a) unilaterally terminate the contract based upon fraudulent traffic, or (b) stop payment. (*See* Borghese Decl. ¶¶ 8-9.) Under Zeeto's apparent interpretation of the agreement, one fraudulent hit is sufficient to allow it to, in its "sole discretion," not pay DMS at all. (*Id.*) The contract does not say that, and DMS would never have agreed to such a one-sided and illusory agreement. (*Id.*) There is no "materiality threshold" within the contract to justify their interpretation. (*Id.*) Zeeto has earned monies from traffic generated by DMS, but refuses to compensate DMS for this revenue, as it is required to do, pursuant to the revenue sharing agreement between DMS and Zeeto. (*Id.; see also* Goss Decl., Exh. 1, ¶ 4.) For example, Mr. Goss, in his declaration, admits that there were no problems with the hits over part of the time for which it owes DMS compensation, but Zeeto still refuses

- 16 -

to pay even for what it admits is legitimate traffic. (Borghese Decl., ¶¶ 9; *cf.* Goss Decl. ¶ 14.)

In fact, Section 4 of the Agreement suggests just the opposite. Section 4 of the agreement governs the parties' rights, and it states: ". . .Zeeto's tracking statistics will be used to determine the numbers upon which payment is made." (Borghese Decl., ¶ 10; *accord.,* Goss Decl., Exh. 1, ¶ 4. This provision implies that Zeeto will pay for valid traffic. To the contrary, DMS has brought this lawsuit, because Zeeto has entirely refused to pay *any* of the monies owed to DMS by unilaterally terminating its contract with DMS. (Borghese Decl., ¶ 9.) Zeeto, having monetized DMS' traffic, has earned advertising monies from traffic on DMS' platform, and Zeeto is liable to DMS for its share of the revenue earned and kept by Zeeto in violation of the parties' revenue sharing agreement. *Id.*

This is a classic contract interpretation issue which cannot be determined as a matter of law on summary judgment. *See, e.g., Wolf, supra,* 114 Cal.App.4th at 1351.

Furthermore, The Agreement includes an indemnification provision whereby DMS would indemnify Zeeto for any "fraudulent traffic." (Borghese Decl., ¶ 7; *accord* Goss Decl., Exh. 1, ¶ 8.) Specifically, provision 8 of the Agreement, entitled "Indemnity" states as follows:

> You [DMS] agree to indemnify and defend Zeeto, its affiliates, subsidiaries, agents, advertisers, employees, and officers from and against any and all third party losses, liabilities, claims, damages, and costs arising out of or related to: (a) breach of any warranties, representations, covenants, or agreements within this Agreement; (b) the Publisher site, including any content served on the Publisher site that is not served by Zeeto; (c) your [DMS'] use of advertising, methods of generating traffic and any claims deriving thereof, or (d) your [DMS'] use of the Services."

(Goss Decl., Exh. 1, ¶ 8, pp. 4-5.)

However, Zeeto claims that it has the right under the contract to unilaterally stop making all payments to DMS for any traffic generated by DMS, even for non-fraudulent hits so that Zeeto has received 100% of the ad revenue, starting July 2021. (*See, e.g.,* Goss Decl. ¶ 14; *see also,* Zeeto's Motion p. 11:1-11.) This is contrary to the terms of

the contract, where, if Zeeto identified any bad or otherwise "fraudulent traffic," it would nevertheless still be obligated to pay for all of the revenues earned from "good" hits or traffic, and then to seek indemnification as its sole remedy. (Borghese Decl., ¶¶ 8-9.)

Finally, the liquidated damages clause in provision 3(e) of the Agreement, entitled "Damages" contradicts Zeeto's interpretation of the Agreement as giving it unilateral authority withhold all monies generated from DMS' monetized traffic, for which Zeeto received payments, but is withholding payments to DMS which are owed to DMS pursuant to the revenue sharing provision of the Agreement, embodied in provision 4 of the Agreement, which states, in pertinent portion, that "Zeeto will retain the agreed to percentage of the revenue for each calendar month and payment will be made from Zeeto to Publisher [DMS] on a net 30 basis." (*See* Goss Decl., Exh. 1, ¶ 4, p. 2.)

These numerous and genuine disputes of material facts militate against summary judgment in Zeeto's favor as to any of the causes of action brought by Plaintiff DMS in its Complaint, because, as discussed above, these genuine disputes of material fact relate to the elements of Plaintiff's three causes of action. *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. 242, 248 ("It is substantive law's identification of which facts are critical and which facts are irrelevant that governs."); *accord Clausen v. M/V New Carissa,* 339 F.3d 1049, 1065 (9th Cir. 2003) (In diversity actions, the state law creating the right sued upon governs issues such as the elements of the cause of action, measure of damages, applicable defenses, etc.).

Based on the foregoing, Plaintiff DMS respectfully requests that the Court deny Defendant Zeeto's instant Motion for Summary Judgment, because issues of material fact exist as to the interpretation and scope of the Agreement.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

# VI.    CONCLUSION

This motion for summary judgment must be denied because the language of the Agreement is at worst (for DMS) ambiguous, and at best (for DMS) supports DMS' interpretation. Either way, summary judgment must be denied for this reason and because of the other genuine issues, information and disputes of material fact identified above.

Dated: July 26, 2023

ELLIS LAW GROUP LLP

By */s/ Lawrence K. Iglesias*
Lawrence K. Iglesias
Attorney for Plaintiff
DIGITAL MEDIA SOLUTIONS, LLC